IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00554-PAB-GPG

LILLIAN L. DAHLIN, an individual,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.,
WELLS FARGO & COMPANY, a California corporation, and
WELLS FARGO & COMPANY SALARY CONTINUATION PAY PLAN,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Defendants' Motion to Dismiss [Docket No. 40]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This is an action for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff was hired by Wells Fargo Bank, N.A. ("Wells Fargo") in 1986 to work as a bank teller in Wells Fargo's branch office in Rifle, Colorado. Docket No. 31 at 3, ¶ 13. Beginning in 2008, oil and gas activity in the Rifle region declined and, combined with the recession, adversely affected market conditions. *Id.*, ¶¶ 17-18. As businesses in Rifle were failing, Wells Fargo transferred two of plaintiff's biggest accounts to a younger banker in Avon,

---

[1]The facts stated below are taken from plaintiff's first amended complaint, Docket No. 31, and are presumed to be true for the purposes of defendants' motion to dismiss.

Colorado. *Id.*, ¶ 18. Despite the declining market conditions around Rifle, plaintiff was expected to meet the same sales goals as bankers in larger Colorado cities such as Boulder, Denver, and Grand Junction. *Id.* at 3, ¶ 19. On April 29, 2016, Wells Fargo terminated plaintiff's employment citing "poor performance." *Id.*, ¶ 20. Following plaintiff's termination, Wells Fargo conceded that its sales goals were unrealistic, eliminated those sales goals, and did not hire anyone new to fill plaintiff's position. *Id.* at 3-4, ¶¶ 21, 23.

At the time of plaintiff's termination, Wells Fargo had a welfare benefit plan, the Wells Fargo & Company Salary Continuation Pay Plan (the "Plan") under which an employee could receive salary continuation pay if her position was eliminated. *Id.* at 4, ¶¶ 24-25. A full-time employee with over twenty-five years of service, such as plaintiff, was eligible for sixteen months of salary continuation pay. *Id.*, ¶ 26. Under the terms of the Plan, however, a Plan participant becomes "immediately ineligible for salary continuation pay" if she is "discharged for a reason other than a qualifying event (including but not limited to poor performance, violation of Wells Fargo's Code of Ethics and Business Conduct, or Wells Fargo's employment policies)." Docket No. 27-1 at 4.[2]

Following her termination, plaintiff submitted a claim for benefits to Wells Fargo & Company (the "Plan Administrator"). *Id.* at 2, 5, ¶¶ 9, 29. On July 18, 2016, the Plan

---

[2]The Court may consider the terms of the Salary Continuation Pay Plan in resolving defendants' motion to dismiss because the Plan is "a document central to . . . plaintiff's claim and referred to in the complaint" and its "authenticity is not in dispute." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005). It also appears that plaintiff intended to append the Plan document contained in Docket No. 27-1 to the complaint. *See* Docket No. 27 (stricken first amended complaint attaching terms of the Salary Continuation Pay Plan as Exhibit A); Docket No. 31 at 4, ¶ 25 (referring to the terms of the Plan, attached as Exhibit A).

Administrator denied plaintiff's claim on the ground that plaintiff was ineligible for salary continuation pay under the Plan. *Id.* at 5, ¶ 30. Plaintiff's appeal, filed on September 15, 2016, was rejected by the Salary Continuation Pay Plan Appeals Committee on October 28, 2016. *Id.*, ¶ 32. Neither the Plan Administrator nor the Appeals Committee investigated plaintiff's allegations that "(i) the depressed market conditions in the Rifle area made it impossible for any business manager to meet Wells Fargo's unreasonable sales performance production standards; and (ii) the market conditions clearly warranted the elimination of [plaintiff's] position." *Id.*, ¶¶ 31, 33. In addition, the Plan Administrator "failed to give a full and fair investigation of [plaintiff's] claims that she was effectively terminated for 'position elimination' rather than 'poor performance' and therefore interfered with [plaintiff's] rights under the Plan." *Id.* at 6, ¶ 36.

Plaintiff filed this lawsuit in the District Court for Garfield County, Colorado on February 12, 2018. Docket No. 1-1 at 1. On March 8, 2018, Wells Fargo removed the case to this Court on the basis of diversity and federal question jurisdiction. Docket No. 1. In the operative complaint, filed on May 2, 2018, plaintiff asserts two causes of action: (1) interference with protected rights under ERISA § 510, 29 U.S.C. § 1140, against Wells Fargo; and (2) denial of benefits under ERISA § 502(a), 29 U.S.C. § 1132(a), against the Plan and the Plan Administrator. Docket No. 31 at 6-8.[3] On June 5, 2018, defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) and 12(c). Docket No. 40. Plaintiff filed a response on June 26, 2018, Docket No. 45, to

---

[3] Although plaintiff's first cause of action is asserted under "ERISA § 502(a)," plaintiff has confirmed that this is a scrivener's error and that the claim is properly asserted under ERISA § 510. Docket No. 45 at 5 n.1.

which defendants replied on July 10, 2018.  Docket No. 49.

**II. LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

The Court reviews a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) using the same standard that applies to a motion brought under Rule 12(b)(6).  *See Adams v. Jones*, 577 F. App'x 778, 781-82 (10th Cir. 2014)

(unpublished) ("We review a district court's grant of a motion for judgment on the pleadings *de novo*, using the same standard that applies to a Rule 12(b)(6) motion." (internal quotation marks omitted)). Thus, the Court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in favor of the same." *Id.* at 782 (internal quotation marks omitted). Judgment on the pleadings is appropriate if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

### III. ANALYSIS

#### A. Interference with Benefits Under ERISA § 510

Defendants argue that plaintiff's first claim for relief should be dismissed because plaintiff makes "only conclusory allegations" that are insufficient to show that Wells Fargo acted with the specific intent to interfere with plaintiff's rights under ERISA. Docket No. 40 at 9-10.

Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. "This prohibition includes characterizing an employee's termination as one 'for cause' for the purpose of unlawfully denying that employee severance benefits." *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 61 (1st Cir. 2005); *see also Furcini v. Equibank, NA*, 660 F. Supp. 1436, 1439 (W.D. Pa. 1987) (recognizing a discrimination claim under § 510 based on allegations

5

that employer characterized employee's discharge as one for cause in order to interfere with his receipt of severance pay).

To state a *prima facie* case under § 510, a plaintiff must allege: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the [employee] may become entitled." *Apsley v. Boeing Co.*, 691 F.3d 1184, 1207 (10th Cir. 2012) (quoting *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987)). A plaintiff "is not required to show that the employer's sole motivation was to interfere with employee benefits[;] she need only show that it was a motivating factor." *Garratt v. Walker*, 164 F.3d 1249, 1256 (10th Cir. 1998). In addition, a plaintiff "may rely upon direct or indirect proof" to establish an employer's specific intent to interfere with protected benefits. *Id.* (quoting *Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir. 1993)); *see also Gavalik*, 812 F.2d at 852 (explaining that, "[i]n most cases, . . . specific intent to discriminate will not be demonstrated by 'smoking gun' evidence" and thus "the evidentiary burden . . . may . . . be satisfied by the introduction of circumstantial evidence").

Defendants argue that plaintiff has not alleged any facts to support a conclusion that Wells Fargo designated plaintiff's termination as one for "poor performance" in order to interfere with her right to salary continuation pay under the Plan. Docket No. 40 at 10. The Court disagrees. The facts alleged in the complaint support a reasonable inference that Wells Fargo was aware, at the time of plaintiff's termination, that declining market conditions in the Rifle region had made Wells Fargo's sales goals unrealistic and that plaintiff's position would have to be eliminated. Prior to plaintiff's

termination, Wells Fargo had already transferred two of her larger accounts to a banker in Avon, Colorado. Docket No. 31 at 3, ¶ 18. In addition, none of the Wells Fargo bankers in the Western Colorado and Resort regions were able to meet their sales goals in 2015. *Id.* at 4, ¶ 22. Finally, once Wells Fargo terminated plaintiff, it eliminated the sales goals it required plaintiff to meet, conceding they were unreasonable and could not be achieved. *Id.* at 3-4, ¶¶ 19, 21, 23. Coupled with the fact that plaintiff had been working at Wells Fargo for over twenty-nine years and would have been entitled to the highest level of salary continuation benefits under the Plan, *id.* at 3-4, ¶¶ 13, 28, these allegations provide sufficient circumstantial evidence that Wells Fargo acted with the intent to deprive plaintiff of protected benefits when it designated her termination as one for "poor performance." *See Li-Hua Olivia Ho v. Abbott Laboratories*, 2013 WL 1348426, at *4 (N.D. Ill. Mar. 31, 2013) (finding that plaintiff could plausibly allege a § 510 claim if she pled facts showing that the defendant "had already selected her to be laid off (and thus would have been eligible for the severance package) but fired her ahead of time to avoid paying her severance"); *cf. Reeves v. Continental Equities Corp. of Am.*, 912 F.2d 37, 43 (2d Cir. 1990) (denying summary judgment on ERISA denial-of-benefits claim where plaintiff's affidavit, in which he stated that "over the ensuing months [following his termination] the entire staff of Continental Equities was progressively eliminated, so that by March 1989 nothing remained of the Company but a shell," created a fact issue as to whether plaintiff was terminated as part of a reduction in force).

Defendants do not challenge any of the other elements of plaintiff's *prima facie*

case. Because plaintiff's allegations are sufficient to show a specific intent to interfere with benefits protected under ERISA, defendants are not entitled to dismissal of plaintiff's § 510 claim.

### B. Denial of Benefits Under ERISA § 502

Defendants argue that they are entitled to dismissal of plaintiff's claim under § 502 of ERISA because plaintiff has not pled any facts showing that the Plan Administrator abused its discretion in denying plaintiff benefits. Docket No. 49 at 5.

Section 502 provides a plan participant or beneficiary a cause of action to "recover benefits due to [her] under the terms of [an ERISA] plan." 29 U.S.C. § 1132(a). Where, as in this case, "an administrator or fiduciary has been given discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the Court reviews a denial of benefits under an "arbitrary and capricious" standard. *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1505 (10th Cir. 1995) (internal quotation marks omitted).[4] "An administrator's action is arbitrary and capricious if it is based on a lack of substantial evidence, mistake of law, bad faith, or conflict of interest." *Id.* (internal quotation marks and bracket omitted). By contrast, a denial of benefits is not arbitrary "if it is a reasonable interpretation of the plan's terms and was made in good faith." *Torix v. Ball Corp.*, 862 F.2d 1428, 1429 (10th Cir. 1988).

Defendants contend plaintiff's "admission that she failed to meet her performance goals" precludes a finding that the Plan Administrator's denial of benefits

---

[4] In addition to alleging that "the Plan Administrator has the discretion to determine eligibility for benefits," Docket No. 31 at 8, ¶ 56, plaintiff agrees that her benefits denial claim is reviewable under an abuse of discretion standard. Docket No. 45 at 8.

8

was arbitrary and capricious. Docket No. 40 at 12. As noted by defendants, the Plan expressly provides that an employee becomes "immediately ineligible for salary continuation pay" if she is "discharged for a reason other than a qualifying event [,] including but not limited to poor performance." Docket No. 27-1 at 4. Plaintiff responds that the Plan Administrator "ignored evidence showing [plaintiff's] position was eliminated." Docket No. 45 at 9 (citing Docket No. 31 at 8, ¶ 57).

The Court finds that plaintiff has failed to state a cognizable claim for wrongful denial of benefits under § 502(a). The relevant section of the Plan provides that an employee becomes "immediately ineligible for salary continuation pay and a Salary Continuation Leave" if the employee is "discharged for a reason other than a qualifying event (including but not limited to poor performance, violation of Wells Fargo's Code of Ethics and Business Conduct, or Wells Fargo's employment policies)." Docket No. 27-1 at 4. Plaintiff alleges that Wells Fargo "designated [her] separation as a termination for 'poor performance.'" Docket No. 31 at 4, ¶ 24. Accordingly, plaintiff's allegations establish that she was disqualified from receiving Salary Continuation Pay under the plain terms of the Plan. *See Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 346 (6th Cir. 2011) (affirming summary judgment in favor of plan administrator where plaintiff's termination for insubordination rendered him ineligible for benefits under the plain terms of the plan); *Maez*, 54 F.3d at 1505 (affirming district court's dismissal of denial-of-benefits claim where the denial was "based on the 'active employee on the payroll' eligibility requirement"); *Generations Physical Med., LLC v. United Healthcare Servs., Inc.*, 2012 WL 136897, at *3 (D.N.J. Jan. 18, 2012) (holding that plaintiff had failed to state a claim that defendant's denial of

benefits was arbitrary and capricious where plan explicitly excluded coverage for the medical services at issue).

Plaintiff argues that she did not receive a "full and fair review" of her claim because the Plan Administrator "failed to address or investigate the accuracy and reliability of the evidence that Dahlin was terminated for position elimination." Docket No. 45 at 10. However, plaintiff does not cite any authority for the proposition that the Plan Administrator was obligated to look beyond the plain language of the Plan to ascertain whether the stated reason for plaintiff's termination was justified.

At least one court has rejected a similar argument. In *Farhner*, the plaintiff was denied benefits under a plan provision that excluded coverage for discharges "for one or more . . . reasons," including insubordination. 645 F.3d at 343. Although the record clearly showed that the plaintiff was terminated for insubordination, he argued that his termination violated the FMLA and that the Plan Administrator "should have looked beyond the plain meaning of the Plan to accurately determine whether [the plaintiff's] termination was proper." *Id.* at 344. The Sixth Circuit disagreed. In affirming summary judgment in favor of the Plan Administrator, the court held that the Plan Administrator was under no obligation to consider the lawfulness of plaintiff's termination in assessing his eligibility for benefits. *Id.* at 345. The court reasoned that, because "the terms of the Plan [were] specifically defined by the plain language of the Plan itself[,] . . . . the Plan Administrator needed to look only at the stated reason for [the plaintiff's] termination, not the underlying conduct, to determine if such reason fell under the list of exclusions outlined by the Plan." *Id.* at 345.

The Court finds that the same reasoning applies in this case. Because the plain

language of the Plan precludes coverage when an employee is "discharged for a *reason* other than a qualifying event," including poor performance, Docket No. 27-1 at 4 (emphasis added), the Plan Administrator was obligated only to determine Wells Fargo's stated reason for terminating plaintiff, not whether that reason was proper or justified. *Compare Besten v. Delta Am. Reinsurance Co.*, 202 F.3d 267, 1999 WL 1336061, at *4-5 (6th Cir. 1999) (unpublished table decision) (holding that denial of benefits was arbitrary and capricious where the terms of the plan precluded coverage for employees "dismissed for cause as defined in the Delta Employee Manual," thereby requiring the Plan Administrator to make a determination as to whether the plaintiff's actions "were insubordinate and interfered with the work of others"), *with Farhner,* 645 F.3d at 345 (holding that the "terms of the Plan are specifically defined by the plain language of the Plan itself" and thus "the Plan Administrator needed to look only at the stated reason for [the plaintiff's] termination"), *and Cline v. Retirement Plan for Glass Rock Plant & Millwood Plant of Oglebay Norton Indus. Sands, Inc.*, 346 F. App'x 8, 10 (6th Cir. 2009) (unpublished) (stating that, because "[e]ligibility for benefits under the Plan [was] conditioned in part upon employment being 'terminated as a result of a disability,'" it did not "matter whether the participant was actually disabled at the time of termination; the relevant question [was] whether he was terminated because the employer considered him disabled").

Plaintiff makes two additional arguments in opposition to dismissal, neither of which is persuasive. First, plaintiff contends that she "may have been terminated for poor performance when employees in positions similar to her were terminated for 'position elimination,'" thereby demonstrating that the Plan Administrator failed to

11

conduct a full and fair review of her claim. Docket No. 45 at 10. However, there are no allegations that other employees were terminated because of "position elimination." The complaint therefore does not support a finding that the "Plan Administrator treated [plaintiff's] claim for benefits different than others similarly situated." *Id.* at 11.

Plaintiff also contends that the "Plan Administrator's potential conflict of interest provides reasonable support that it denied [plaintiff's] claims arbitrarily and capriciously." Docket No. 45 at 11. But a conflict of interest arising from a plan administrator's dual roles as plan funder and plan administrator is only significant when there is reason to believe that the plan administrator's benefits determination was affected by that conflict. *See Menge v. AT&T, Inc.*, 595 F. App'x 811, 814 (10th Cir. 2014) (unpublished) (holding that the plan administrator's "inherent conflict of interest ha[d] little bearing in th[e] case, given that (1) the [Quality Review Unit] relied on the medical opinions of independent physician advisors in upholding the denial of benefits, and (2) the QRU was operated by Sedgwick, rather than AT&T"); *Maez*, 54 F.3d at 1505 ("An administrator's action is arbitrary and capricious if it is based on a lack of substantial evidence, mistake of law, bad faith, or conflict of interest." (internal quotation marks and bracket omitted)). According to the allegations in this case, the Plan Administrator denied benefits on the sole ground that plaintiff was terminated for "poor performance." Because the Plan Administrator's determination involved a straightforward application of the Plan terms based on Wells Fargo's stated reason for plaintiff's discharge, the allegations do not give rise to a reasonable inference that a

conflict of interest impacted the denial of plaintiff's benefits claim.[5]

In summary, plaintiff has not plausibly alleged that the Plan Administrator's denial of benefits was arbitrary and capricious. Plaintiff's claim for benefits under § 502 will therefore be dismissed.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Dismiss [Docket No. 40] is **GRANTED** in part and **DENIED** in part as stated in this order. It is further

**ORDERED** that plaintiff's second cause of action for denial of benefits under ERISA § 502(a) is dismissed with prejudice. It is further

**ORDERED** that defendants Wells Fargo & Company and Wells Fargo & Company Salary Continuation Pay Plan are dismissed from this lawsuit.

DATED March 25, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge

---

[5]Plaintiff's conflict of interest argument would carry more weight if the Plan Administrator was also responsible for the decision to terminate plaintiff's employment. *See Farhner*, 645 F.3d at 345-46 (stating that, in cases "where the Plan Administrator did not make the termination decision and had no involvement in the termination decision, it would be imprudent to require the Plan Administrator to look beyond the terms of the Plan to accurately ascertain the underlying facts where such action is not required by the language of the Plan itself"). Here, however, the allegations establish that plaintiff's employer, Wells Fargo, N.A., and the Plan Administrator, Wells Fargo & Company, are two separate entities, Docket No. 31 at 2, ¶¶ 8-9, and that only Wells Fargo was responsible for the termination decision. *Id.* at 3-4, 6, ¶¶ 20, 24, 37.