IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00554-PAB-GPG

LILLIAN L. DAHLIN, an individual,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.,

    Defendant.
_____

# ORDER
_____

This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 85] and plaintiff's Motion for Summary Judgment [Docket No. 86]. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Plaintiff began working for plaintiff's predecessor bank in 1986. *See* Docket No. 86 at 3, ¶ 1. That bank became a part of Wells Fargo in 1986. *See* Docket No. 85 at 3, ¶ 1. For a short time, plaintiff worked as a teller before moving to the consumer lending side and then to the business lending side of the company. *See* Docket No. 86 at 3, ¶ 2. She was in this role until her termination on April 29, 2016. *Id.* At the time of her termination, she was a Senior Business Relationship Manager. *Id.* The duties of a relationship manager are to "bring in deposits and loans and then cross-sell other bank products, such as treasury management [and] credit cards." *See* Docket No. 85 at 3,

---

[1] The following facts are undisputed unless otherwise indicated.

¶ 2. Relationship managers' performance was measured by "new loan production, deposit production, partner proxy revenue, solutions as a percentage of target, and loan/deposit growth as a percentage of target." *Id.*, ¶ 3. Sales goals were set nationally based on title, not based on the market in which a particular relationship manager was working. *Id.* at 4, ¶ 4. Defendant admits that product sales goals were eventually eliminated. *See* Docket No. 91 at 7, ¶ 16.

Beginning in 2008, one of plaintiff's markets, oil and gas, began to decline as a result of the global recession. *See* Docket No. 86 at 4, ¶ 5. Defendant was aware that oil and gas production had begun to decline, and at least one supervisor noted that 2009 was a difficult year. *See id.*, ¶¶ 5-7; Docket No. 87 at 4-5, ¶¶ 5-7. In 2013, plaintiff's performance began to suffer. *See* Docket No. 85 at 5, ¶¶ 11-12. She did not meet "any of her sales goals in 2013" and received a two out of five rating, with five being the highest. *Id.*, ¶ 12. In her 2014 performance review, plaintiff only met her partner proxy goal. *See id.* at 5-6, ¶ 13. She again received a two out of five performance rating in 2015. *Id.* at 6, ¶ 14. On July 27, 2015, defendant placed plaintiff on a performance improvement plan. *Id.*, ¶ 15. Plaintiff admits that she did not the meet performance standards required by the plan. *Id.* Plaintiff continued to fail to meet standards and was given an informal performance warning on December 15, 2015 due to a "continued lack of sales performance production." *Id.*, ¶ 16. Plaintiff, however, was not the only relationship manager who failed to meet his or her goals; relationship managers in the Resort Market, Grand Junction, and Durango all failed to meet their goals. *See* Docket No. 86 at 6, ¶¶ 14-17. While plaintiff was failing to meet her goals

in 2015, two of plaintiff's clients were transferred to another relationship manager due to "regulatory issues and compliance concerns." *See* Docket No. 85 at 5, ¶ 10. This was part of a broader strategic restructuring of defendant's business. *See* Docket No. 86 at 6-7, ¶ 19.

By mid-December 2015, plaintiff was aware that she was likely going to be terminated. *See* Docket No. 85 at 6-7, ¶ 18. She began exploring unemployment insurance in November or December of 2015. *Id.* at 7, ¶ 19. On March 2, 2016, defendant gave plaintiff a formal performance warning for failing to meet her goals for loans, proxy goals, and deposits, of which she had met 0% of her target goals. *See id.*, ¶ 20. Between 2014 and 2015, plaintiff only met one sales goal, that for "[p]artner [p]roxy" in 2014. *Id.*, ¶ 21. In April 2016, Sam Inman and John Hostetter, two of plaintiff's managers, in conjunction with human resources, decided to terminate plaintiff's employment. *See id.* at 4-5, 7, ¶¶ 8, 23. Plaintiff was terminated on April 29, 2016. *See* Docket No. 86 at 3, ¶ 2.

On February 12, 2018, plaintiff filed suit in the District Court for Garfield County, Colorado. *See* Docket No. 1-1 at 1. Defendant removed the case to this Court on March 8, 2018. *See* Docket No. 1. On March 25, 2019, the Court dismissed plaintiff's second cause of action for denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a), as well as dismissed Wells Fargo & Company and Wells Fargo & Company Salary Continuation Pay Plan from the case. *See* Docket No. 68 at 13. Therefore, plaintiff has one remaining claim, that for interference with an employee's rights to benefits under ERISA § 510, 29 U.S.C. § 1140. *See id.* at 5-8; *see*

*also* Docket No. 31 at 6.  The parties have filed cross-motions for summary judgment, each arguing that they are entitled to judgment as a matter of law.  *See* Docket Nos. 85-86.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir.

1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*  Cross-motions for summary judgment must be viewed separately, and the denial of one does not necessitate the granting of the other.  *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016) (citations omitted).

## III. ANALYSIS

Section 510 makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."  29 U.S.C. § 1140.  "To establish a prima facie case under ERISA § 510, [plaintiff] must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the [plaintiff] may become entitled."  *See Apsley v. Boeing Co.*, 691 F.3d 1184, 1208 (10th Cir. 2012) (citation omitted).  Once a prima facie case is made, defendant "must produce admissible evidence of a legitimate, nondiscriminatory reason for [its] challenged actions."  *Id.* (quotations and citations omitted).  Then, plaintiff is required "to demonstrate that this reason was pretextual."  *Id.* (citation omitted).  Although an

employee's termination is coded as "for cause," if the termination was characterized as such simply for the purpose of unlawfully denying severance benefits, an employer has violated § 510.  *See Dahlin v. Wells Fargo Bank, N.A.*, No. 18-cv-00554-PAB-GPG, 2019 WL 1358845, at *2 (D. Colo. Mar. 25, 2019) (collecting cases).

### A.  Defendant's Motion for Summary Judgment

Defendant moves for summary judgment, arguing that the undisputed evidence demonstrates that the only reason for plaintiff's termination was her "poor performance over a multi-year period."  *See* Docket No. 85 at 14.  Plaintiff argues that, while it is undisputed that defendant's stated reason was her poor performance, there is a genuine issue of material fact regarding defendant's real reason to terminate her, namely, "to eliminate business bankers in the Western Slope and Resort market region,' and to avoid paying her severance benefits.  *See* Docket No. 88 at 16.  The Court agrees with plaintiff that there are genuine issues of material fact and a reasonable jury could conclude that defendant intended to deprive plaintiff of her severance benefits.

The undisputed evidence in the record is: (1) plaintiff failed to meet performance goals from 2013 to 2016; (2) plaintiff would have been entitled to sixteen months of severance pay had her position been eliminated; (3) other relationship managers failed to meet their goals; and (4) plaintiff was fired, rather than severed as a result of her position being eliminated.  Standing alone, this evidence might support summary judgment in favor of defendant.  The critical issue, however, is that plaintiff has put material evidence in dispute regarding defendant's intent.

Plaintiff may rely on "indirect proof that an adverse employment action was motivated by an intent to interfere with employee benefits protected by ERISA." *See Garratt v. Walker*, 164 F.3d 1249, 1256 (10th Cir. 1998) (citations and quotations omitted). Plaintiff relies on the following indirect evidence: (1) her performance goals were unobtainable; (2) no relationship manager was able to fully meet his or her goals; (3) most relationship managers quit, but plaintiff refused to do so; (4) defendant had internal discussions regarding eliminating positions like plaintiff's; (5) after plaintiff was fired, defendant did not fill her position, effectively eliminating it; (6) the sales goals that plaintiff had to meet were eliminated as unattainable after plaintiff was fired; and (7) plaintiff would have been entitled to severance benefits had her position been eliminated. *See* Docket No. 88 at 7-8, ¶¶ 25-27, 33.  For example, in support of her assertion that the performance goals were unobtainable, plaintiff cites evidence that nearly no relationship manager was able to fully meet those goals. *See id.* at 11, ¶ 7. She also points to deposition testimony that discusses a possible need to eliminate positions like plaintiff's, *see id.* at 7-8, ¶¶ 25, 33, and support for the proposition that no one was hired to fill her position after she was fired. *See id.* at 13, ¶ 14.

Considered as a whole, a reasonable jury could conclude from this evidence that "a motivating factor," *Garratt*, 164 F.3d at 1256, in plaintiff's firing was defendant's intent to deprive plaintiff's benefits in violation of § 510. *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1151 (10th Cir. 2011) (noting that a plaintiff must demonstrating that an intent to deprive the plaintiff of benefits was a "motivating factor" in the plaintiff's termination).  It is undisputed that defendant knew that plaintiff would be

7

entitled to severance benefits were her position eliminated. *See* Docket No. 86 at 8, ¶ 30. And plaintiff points to evidence that defendant had discussions regarding eliminating positions like plaintiff's.[2] This, in combination with the failure of any relationship manager to meet his or her goals, the decision to not fill plaintiff's position after she was terminated, and the elimination of the sales goals after plaintiff's departure, creates a genuine issue of material fact over whether defendant intended to avoid paying plaintiff – a 29 year employee – her severance benefits. *See Reeves v. Continental Equities Corp. Of Am.*, 912 F.2d 37, 43 (2d Cir. 1990) (finding that the eventual elimination of the plaintiff's position after termination supported the inference that the plaintiff was terminated to avoid paying him his severance benefits).

Defendant argues that plaintiff cannot prove defendant's intent and that she is merely providing excuses for her failed performance. *See* Docket No. 85 at 14-18. The Court is unpersuaded. First, in arguing that plaintiff cannot prove defendant's intent, defendant seems to be suggesting that plaintiff must provide a smoking gun. But "there is rarely direct evidence of wrongful intent." *See Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir. 1993). Defendant relies on *Punt v. Kelly Services*, No. 14-cv-02560-CMA-MJW, 2016 WL 67654 (D. Colo. Jan. 6, 2016), for the proposition that

---

[2] Defendant vigorously disputes plaintiff's assertions and identifies its own record support. For example, defendant states that, while plaintiff's position was not filled, such a decision was made on a case-by-case basis and the position was not eliminated. *See* Docket No. 87 at 10-11, ¶ 34. Regarding plaintiff's assertion that the goals were unattainable and positions needed to be eliminated, defendant points to deposition testimony that there were only discussions regarding elimination and no actual decisions, and that Mr. Inman testified that there was an opportunity to be successful even with the high performance bar. *See id.* at 8, ¶ 21. But this only further underscores why defendant cannot succeed on its motion for summary judgment; these issues are disputed and provide circumstantial evidence of defendant's intent.

plaintiff's assertions are mere conjecture that fail to demonstrate intent. *Punt*, however, is inapposite. In *Punt*, the plaintiff was fired after having a significant number of absences. *See id.* at *3. The plaintiff argued that the real reason she was fired was because she was diagnosed with breast cancer and her employer believed she would be "unreliable" given her diagnoses. *See id.* at *11. The only evidence in the record was one comment regarding reliability. *Id.* Because of that, the court found that the plaintiff's assertion that she was fired because of her breast cancer, and not her tardiness, was "mere conjecture." *Id.* Here, however, there is more than a single, off-hand comment. Rather, plaintiff has presented evidence of internal discussions regarding the need to eliminate positions like plaintiff's, defendant's failure to fill plaintiff's position after she was fired, and the elimination of the sales goals that defendant used to justify plaintiff's firing, plus defendant's knowledge that eliminating plaintiff's position would make her eligible for severance benefits.

Second, regarding plaintiff's excuses for failed performance, the question is not whether plaintiff failed to meet performance goals. That is not in dispute. The issue is whether the performance goals and defendant's transferring of two of her clients to another manager were means of setting plaintiff up to fail and thereby denying plaintiff her severance benefits. *See Dahlin*, 2019 WL 1358845, at *2. Defendant is correct that, even with poor market conditions, defendant was not required to keep an underperforming employee on the payroll. *See* Docket No. 85 at 14 ("Wells Fargo was entitled to move on after it became clear that Ms. Dahlin would not succeed."). If the only evidence in the record was that the overall economy was poor and plaintiff was not

meeting expectations, defendant might succeed in its motion. The issue is that plaintiff has presented evidence that defendant knew plaintiff's position should be eliminated, thereby arguably providing a motive for defendant to save money by firing her before effectively eliminating her position. A reasonable jury could conclude that defendant's decision to fire plaintiff, rather than to eliminate her position, was intended to deprive plaintiff of her severance benefits.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff also moves for summary judgment. *See* Docket No. 85. The denial of defendant's motion does not automatically result in plaintiff succeeding in her motion. *See Supreme Court of New Mexico*, 839 F.3d at 906-07. Plaintiff must still show that there is no dispute as to any material fact and that the undisputed evidence demonstrates that defendant violated § 510.

Plaintiff argues that the undisputed facts demonstrate that her performance goals were unobtainable and elimination of her position would have rendered her eligible for severance benefits. *See* Docket No. 86 at 11. Thus, because she was fired even though the role should have been eliminated, she contends that she is entitled to summary judgment. *See id.* at 11. Defendant argues that the evidence shows that plaintiff failed to meet her performance goals and, therefore, the motion should be denied. *See* Docket No. 87 at 14. The Court agrees and finds that there are genuine disputes as to material facts that preclude summary judgment.

As previously noted, the undisputed evidence in the record is: (1) plaintiff failed to meet performance goals from 2013 to 2016; (2) plaintiff would have been entitled to

sixteen months of severance pay had her position been eliminated; (3) other relationship managers failed to meet their goals; and (4) plaintiff was fired, rather than severed as a result of her position being eliminated. Although plaintiff "is not required to show that the employer's sole motivation was to interfere with employee benefits," she still must point to undisputed evidence in the record "that it was a motivating factor." *See Carter*, 662 F.3d at 1151. The "evidence must be specific and must allow a reasonable factfinder to find that one of [defendant's] motives was to violate ERISA." *See Huske v. Honeywell Int'l, Inc.*, 298 F. Supp. 2d 1222, 1229 (D. Kan. 2004). The only undisputed evidence, however, is that plaintiff would have been entitled to severance benefits under certain conditions, those conditions were not met, and plaintiff did not meet her performance goals. But the existence of a possibility for severance benefits combined with discharge that forecloses that possibility only demonstrates that the "loss of rights is a mere consequence, as opposed to a motivating factor" for plaintiff's termination. *See Carter*, 662 F.3d at 1151.

Plaintiff may, of course, utilize indirect evidence to support her claim. *Garret*, 164 F.3d at 1256. And, as discussed above, plaintiff has identified the following indirect evidence: (1) her performance goals were unobtainable; (2) no relationship manager was able to fully meet his or her goals; (3) most relationship managers quit, but plaintiff refused to do so; (4) defendant had internal discussions regarding eliminating positions like plaintiff's; (5) after plaintiff was fired, defendant did not fill her position, effectively eliminating it; (6) the sales goals that plaintiff had to meet were eliminated as unattainable after plaintiff was fired; and (7) plaintiff would have been entitled to severance benefits had her position been eliminated. *See* Docket No. 88 at 7-8, ¶¶ 25-

27, ¶¶ 33. The issue, however, is that defendant disputes each of plaintiff's assertions and points to record support. Regarding the elimination of plaintiff's position after plaintiff was fired, defendant contends that the decision to eliminate certain positions was made on a case-by-case basis and that, in any event, the position was not eliminated. See Docket No. 87 at 10-11, ¶¶ 34. As to the non-obtainability of plaintiff's performance goals, defendant cites deposition testimony stating that meeting those goals was possible. See id. at 8, ¶ 21. Thus, even if plaintiff's indirect evidence could in theory support a conclusion that plaintiff is entitled to summary, it cannot do so here because it is disputed. As a result, there is a genuine issue of material fact as to defendant's intent and plaintiff's motion will be denied.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 85] is **DENIED**. It is further

**ORDERED** that plaintiff's Motion for Summary Judgment [Docket No. 86] is **DENIED**.

DATED March 29, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge